**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LEO TECHNOLOGIES, LLC,<br>*Plaintiff,*<br>*v.*<br>FLASH AI, LLC,<br>*Defendant.* | Civil Action No: 2:26-cv-00829-EAS-CMV<br>Judge Edmund A. Sargus<br>Magistrate Judge Chelsey M. Vascura |

**DEFENDANT FLASH AI, LLC'S MOTION TO DISMISS**

Defendant, Flash AI, LLC ("Flash AI") respectfully moves the Court to Dismiss the Complaint of Leo Technologies, LLC ("LeoTech") pursuant to Fed. R. Civ. P. 12(b)(6) in its entirety. LeoTech's Complaint is nothing more than a disappointed bidder's effort to improperly use the Lanham Act as a collateral mechanism to attack a public procurement award, which LeoTech is already attacking using state law claims in state court.[1] However, the Lanham Act does not create a claim for ordinary bid protests, disagreements about an agency's evaluation of competing proposals, or assertions that a rival's proposal was supposedly too optimistic, too inexpensive, or insufficiently experienced. Yet that is all LeoTech has pleaded.

LeoTech's Complaint identifies no actionable "commercial advertising or promotion" to the public, basing its claims on Flash AI's response to a single, closed, government Request for Proposal ("RFP") submitted to one purchaser (Ohio Department of Rehabilitation and Correction ("ODRC")) as part of a competitive procurement. But that is not advertising to the relevant

[1] *See Leo Technologies, LLC v. Ohio Department of Rehabilitation & Correction et al.*, Case No. 26 CV 006356 (Franklin County Court of Common Pleas).

purchasing public. It is a bid-specific solicitation response directed to a lone governmental decisionmaker.

But putting aside the lack of any commercial advertising or promotion, LeoTech's Complaint also fails to the extent it pleads only conclusory allegations of false statements. In particular, the Complaint fails to allege specific facts plausibly establishing material deception as required under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Nor does the Complaint allege any plausible factual basis for the extraordinary assertion that, but for Flash AI's alleged statements, ODRC would have awarded the contract to LeoTech.

For these reasons, and because no amendment by LeoTech would be sufficient to save its Complaint, Flash AI respectfully requests this Court dismiss Count I of LeoTech's Complaint with prejudice and decline to exercise supplemental jurisdiction over Counts II and III.

Dated: September 18, 2026

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

*/s/ Rachel A. Smoot*

Rachel A. Smoot (0092296)
rsmoot@taftlaw.com
41 S. High Street, Suite 1800
Columbus, OH 43215
Phone: (614) 221-2838
Fax: (614) 221-2007

Philip R. Bautista (0073272)
pbautista@taftlaw.com
200 Public Square, #3500
Cleveland, OH 44114
Phone: (216) 706-3957
Fax: (216) 241-3707

*Attorneys for Defendant Flash AI, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| LEO TECHNOLOGIES, LLC,<br>*Plaintiff,*<br>*v.*<br>FLASH AI, LLC,<br>*Defendant.* | Civil Action No: 2:26-cv-00829-EAS-CMV<br>Judge Edmund A. Sargus<br>Magistrate Judge Chelsey M. Vascura |

**DEFENDANT FLASH AI, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

## I. INTRODUCTION.

This dispute is nothing more than LeoTech's attempt to repackage its disappointment at losing a government contract into a federal false advertising claim. Indeed, LeoTech is seeking simultaneous relief in state court from ODRC and Flash AI. But likely because it knew it would not find relief before the state court, and despite being able to seek the same relief there (including its alleged unfair competition claims), LeoTech is alleging here that Flash AI proffered commercial advertising or promotion containing false representations through Flash AI's proposal submitted in response to a single ODRC RFP. However, LeoTech's allegations alone do not rise to a Lanham Act claim.

Section 43(a)(1)(B) is directed to false or misleading representations made "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). In order to qualify as commercial speech, the Sixth Circuit requires, *inter alia*, that said speech was intended to influence customers to buy the defendant's goods or services and was disseminated sufficiently to constitute advertising or promotion within the relevant market or to a substantial portion of either party's customer or client base. *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 801 (6th Cir. 2015). However, LeoTech alleges

neither broad dissemination nor a promotion directed to a substantial portion of a relevant purchasing public. Instead, it challenges a procurement-specific proposal furnished to a single governmental agency in response to that agency's particular solicitation. A one-off competitive bid submission is not transformed into commercial advertising merely because the bidder hopes to win the business of the soliciting agency.

Moreover, LeoTech's Complaint is built on little more than speculation, which itself is not enough to give rise to a false advertising claim. LeoTech repeatedly alleges, "upon information and belief," that Flash AI could not implement its system, lacked sufficient personnel, failed to satisfy particular requirements, or could not perform at its proposed price. But LeoTech does not plead *facts* establishing the content of the allegedly false statements or the objective and verifiable falsity of any statement when made. Nor does LeoTech plead a plausible causal nexus from any alleged statement to ODRC's award decision. LeoTech only broadly concludes that ODRC "would have awarded the Contract to LeoTech" (ECF No. 1 ¶ 44) but sans any factual allegations showing that LeoTech would have prevailed under the RFP's scoring methodology or that the challenged representations somehow affected ODRC's decision.

As such, LeoTech's Complaint fails to meet the requisite pleading standard to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding on motions to dismiss "courts are not bound to accept as true a legal conclusion couched as a factual allegation" which "must be enough to raise a right to relief above the speculative level") (internal citation omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (internal citation omitted). Therefore, this Court should dismiss the federal claim with prejudice and decline to exercise supplemental jurisdiction over the purely state-law claims.

## II. BACKGROUND.[2]

### A. LeoTech's Allegations in the Federal Complaint.

In early 2026, ODRC issued an RFP for Offender Communication Monitoring and Transcription Services. [ECF No. 1 ¶ 1.] According to the RFP, each proposal was required to contain certain information. (*See* Ex. A at 20-29.)[3] Both LeoTech and Flash AI submitted bid proposals in response to the RFP (ECF No. 1 ¶¶ 18, 19), and on or about May 27, 2026, ODRC awarded the contract to Flash AI (*id.* ¶ 20). According to the Complaint, LeoTech alleges that "[a]s a competing bidder on the RFP, LeoTech has been, and continues to be, injured by Flash AI's deceptive practices and unlawful conduct." [*Id.* ¶ 2.]

LeoTech alleges that Flash AI "made false and misleading material representations to ODRC in connection with Flash AI's response to the RFP." [ECF No. 1, ¶ 25.] Notably, although LeoTech appears to link these allegations to documents received in response to a public records request, LeoTech has attached no such documents in support of its Complaint.

---

[2] Flash AI disputes many allegations in the Complaint; however, the Court must accept all well pleaded allegations as true at this stage.

[3] In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne County Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018). "Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010); *see also Winget v. JP Morgan Chase Bank*, N.A., 537 F.3d 565, 576 (6th Cir. 2008) (stating that, on a motion to dismiss, a court "may take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity"). "[T]he Sixth Circuit 'has taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6).'" *Sifuentes v. Progressive Corp.*, 2026 WL 1700535, at *5 (N.D. Ohio June 12, 2026) (citing *Armengau v. Cline*, 7 F.App'x 336, 344 (6th Cir. 2001)). "If a document is 'referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Id.* (citation omitted). Here, Flash AI proffers portions from the state court docket not for the truth of the facts recited therein but for the existence of the state court's judicial opinion on LeoTech's Motion for Temporary Restraining Order as well as certain documents referenced within LeoTech's Complaint, including the RFP and Flash AI's proposal.

LeoTech's allegations appear to be based on four categories of alleged misrepresentations. First, LeoTech alleges that Flash AI "misrepresented that it was prepared to implement its Flash Signal system fully and immediately upon Contract execution." [*Id.* ¶ 26.] LeoTech's purported support for this allegation are further allegations made "upon information and belief" that Flash AI was not and is currently not "capable of implementing its Flash Signal system fully and immediately on the scale required" by the RFP or Flash AI's contract with ODRC. [*Id.* 1 ¶¶ 27-29.] LeoTech also alleges "upon information and belief" that Flash AI "needs to hire and train at least two dedicated platform support specialists to fully implement its Flash Signal system" and that "Flash AI's own documents show that it would take at least twelve weeks for Flash AI to fully implement its Flash AI system at ODRC." [*Id.* ¶¶ 30, 31.]

Second, LeoTech alleges that Flash AI "misrepresented that it has extensive experience working with multiple Ohio state and law enforcement agencies" starting in 2023 and "processing the categories of data that correctional institutions generate every day." [ECF No. 1, ¶¶ 32, 34.] LeoTech alleges "upon information and belief" that Flash AI "only had experience administrating a very small number of pilot programs and demonstrations." [*Id.* ¶ 33.] LeoTech also alleges that "Flash AI does not identify any individuals who worked hands-on with such agencies beginning in 2023" and that "Flash AI could not have been working" with agencies in 2023 because "Flash AI did not come into existence until October 2025." [*Id.* ¶ 35.]

Third, LeoTech alleges that "Flash AI misrepresented that it meets all applicable" Criminal Justice Information System Security Policy controls. [ECF No. 1, ¶ 36.] LeoTech appears to base this allegation on further allegations that "Flash AI acknowledges its system cannot support a Privileged Access Management solution," that Flash AI does not "maintain ransomware back-up

protection," and "upon information and belief" that Flash AI "has not conducted a privacy impact assessment." [*Id.* ¶¶ 37-39.]

Fourth, LeoTech alleges "upon information and belief" that Flash AI "misrepresented its ability to perform its obligations under the Contract at the price that Flash AI offered." [ECF No. 1, ¶ 40.] LeoTech purportedly supports this allegation by further alleging that "the price included in Flash AI's bid proposal is highly speculative given that" Flash AI's system "is unproven at the scale required by the RFP and Flash AI does not currently employ the number of individuals" that LeoTech alleged upon information and belief are necessary to perform the required services. [*Id.* ¶ 42.]

LeoTech concludes with the allegation "[u]pon information and belief, but for Flash AI's false and misleading material representations to ODRC and material omissions, ODRC would have awarded the Contract to LeoTech." [ECF No. 1, ¶ 44.] LeoTech further claims that it "has been harmed as a result of Flash AI's false and misleading representations and material omissions to the extent they caused ODRC to award the Contract to Flash AI" and that such representations are "likely to cause LeoTech to lose sales and relative share in the market." [*Id.* ¶ 45-45.]

### B. LeoTech's State Court Action.

On the same day LeoTech filed this action, LeoTech filed an action in Ohio state court, which is still pending and captioned as *Leo Technologies, LLC v. Ohio Department of Rehabilitation & Correction et al.*, Case No. 26 CV 006356 (Franklin County Court of Common Pleas). (*See* Ex. B, 7/27/26 Order Denying Motion for Temporary Restraining Order at 2.) LeoTech's state court action seeks both declaratory judgment and injunctive relief, requesting the Court "(1) enjoin ODRC from executing or otherwise authorizing Flash AI, Kiwi Group, or any other third party to perform any work on the Contract; (2) enjoining Flash AI and Kiwi Group

from performing any work on the Contract, and (3) barring ODRC from making any payment to Flash AI." (*Id.*)

LeoTech moved for a temporary restraining order enjoining performance of the contract between ODRC and Flash AI, which the state court denied. (Ex. B at 1.) In addressing the standard for injunctive relief, the court confirmed the broad discretion provided to public agencies in bid awards and that "courts cannot interfere unless it clearly appears that the public authority is abusing the discretion so vested in it." (*Id.* at 3-4 (citation omitted).) The court further found that to grant the temporary restraining order "would cause significant disruption to the status quo," as "[t]he evidence establishes that Flash AI is actively working with ODRC to monitor and transcribe inmate calls using its software" with 178 ODRC employees having completed training and Flash AI successfully flagging security threats. (*Id.* at 4.)

As to LeoTech's substantial likelihood of success on the merits, the court determined that "LeoTech's claim for declaratory judgment is moot as Flash AI commenced performing work under the Contract . . . and continues to do so at the present time." (Ex. B at 5.) But even if LeoTech's claims were not moot, the court determined:

> Based on the RFP's formula, which considered price pursuant to state law as well as the technical scores, ODRC determined that Flash AI's proposal would be most advantageous to the state because Flash AI was the highest scoring candidate. Any difference in the technical scores was overshadowed by the vast price differences between LeoTech and Flash AI's proposals.

(*Id.* at 6.)

Perhaps most relevant to the case at bar, the state court determined that any purported irreparable harm asserted by LeoTech "is purely speculative since it assumes that it would be the successful offeror if this Court orders ODRC to restart the RFP process" and although LeoTech may have lost this contract, "it still has the opportunity to bid for other contracts with ODRC or

another government agency in the State of Ohio" including the contract at issue should ODRC not elect to renew with Flash AI. (Ex. B at 6.)

## III. LEGAL STANDARD.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Anderson v. Microsoft Corp.*, No. 1:14-CV-763, 2015 WL 1969403, at *3 (S.D. Ohio May 1, 2015) (quoting *Iqbal*, 556 U.S. at 678). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 557). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV. ARGUMENT.

Applying these principles, LeoTech fails to adequately plead false advertising through its claims of (1) unfair competition under the Lanham Act, (2) unfair competition under the Ohio Uniform Deceptive Trade Practices Act, and (3) unfair competition and deceptive trade practices under Ohio common law. Its pleading is entirely made up of recitals of the elements and conclusory statements made merely upon information and belief. This is insufficient to plead claims to relief that are plausible on their face.

### A. Standard for False Advertising Under Federal and Ohio Law.

As a threshold matter, the Court applies the same analysis to claims brought under the Lanham Act, the Ohio Uniform Deceptive and Unfair Trade Practices Act ("ODTPA"), and Ohio

common law. "[T]he Ohio Deceptive Trade Practices Act (ODTPA) is substantially similar to the Lanham Act and 'when adjudicating claims under the ODTPA, Ohio courts shall apply the same analysis applicable to claims commenced under the analogous federal law.'" *Best v. AT & T Mobility, LLC*, No. 1:12-CV-564, 2015 WL 1125539, at *7 (S.D. Ohio Mar. 12, 2015) (quoting *Chandler & Assoc. v. America's Healthcare Alliance*, 709 N.E.2d 572, 580 (Ohio Ct. App. 1997)). And "Ohio state law claims of unfair competition and deceptive and unfair trade practices under Ohio Rev. Code § 4165.02 are analyzed similarly." *Id.* "Where claims are made under the Ohio common law and the ODTPA, Ohio courts are to apply essentially the same analysis as that applied in assessing the law of unfair competition under the federal statutes." *Id.* (quoting *Cesare v. Work*, 36 Ohio App.3d 26, 520 N.E.2d 586, 590 (Ohio Ct. App. 1987)).

The Lanham Act imposes liability only where a defendant, "in commercial advertising or promotion," misrepresents the nature, characteristics, qualities, or geographic origin of goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B). The Sixth Circuit has defined "commercial advertising or promotion" to mean:

> (1) commercial speech; (2) for the purpose of influencing customers to buy the defendant's goods or services; (3) disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the plaintiff's or defendant's existing customer or client base.
>
> *Grubbs*, 807 F.3d at 801.

"Under either [federal or state] statute," to prevail on a false advertising claim, plaintiff must prove the following five elements:

> (1) the defendant made false or misleading statements of fact concerning either its own or another's product; (2) the statements actually or tend to deceive a substantial portion of the intended audience; (3) the statements are material in that they will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Id.* at *5; *see also Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 410 (6th Cir. 2024) ("To state a Lanham Act claim for false advertising, a plaintiff must identify a deceptive or false statement made in 'commercial advertising or promotion' upon which his or her allegations are premised.").

LeoTech's false advertising claim must be dismissed because it fails to adequately plead—and in fact, it is unable to plead—several required elements, namely that the alleged statements (1) are commercial advertising or promotion, (2) are false, (3) are material, and (4) are causally linked to harm to LeoTech.

**B. LeoTech" Fails to Allege "Commercial Advertising or Promotion."**

Here, LeoTech has failed to identify any commercial advertising or promotion as contemplated by the Sixth Circuit. *See Grubbs*, 807 F.3d at 801.

LeoTech's own allegations establish that Flash AI's proposal (i.e., the challenged communication) was not commercial advertising or promotion under the Sixth Circuit's standard. The Complaint concerns Flash AI's submission to ODRC in response to one defined RFP. [ECF No. 1 ¶¶ 16–20, 25–43.] LeoTech alleges no dissemination beyond ODRC. Nor does it identify any member of the relevant purchasing public that received the alleged representations, any existing customer or client base to which said proposal was distributed, and no facts showing that a singular, procurement-specific response reached a substantial portion of any market. *Cf. El Paso Disposal, LP v. Ecube Labs Co.*, No. EP-24-CV-97-KC, 2025 WL 1766310, at *5 (W.D. Tex. June 26, 2025) (inferring sufficient dissemination at motion to dismiss stage when pleading included allegations of "a sophisticated and wide-ranging fraudulent scheme" such that "it is a reasonable inference that these statements were made a substantial number of times to Plaintiffs' customers, and as part of broader efforts to encourage customers to" leave plaintiff).

These deficiencies are fatal. *See Wakefern Food Corp. v. Marchese*, No. 2:20-CV-15949-WJM-MF, 2021 WL 3783259, at *4 (D.N.J. Aug. 26, 2021) (dismissing false advertising claim for failing to establish that alleged representations were sufficiently disseminated to the relevant purchasing public and concluding the issue was appropriately resolved on a motion to dismiss when plaintiff failed to "allege that the Defendants targeted a class or category of purchasers or potential purchasers, not merely particular individuals" (cleaned up)).

Commercial promotion seeks to influence a market or a sufficiently substantial segment of customers. A proposal made in response to a solicitation seeks to persuade one identified procuring entity to select one bidder for one contract under prescribed evaluation criteria. The latter is part of a procurement process, not marketplace advertising. In this instance, the ODRC RFP had two specific categories of evaluation, technical and cost. (Ex. A, Request for Proposal at 8-12.) ODRC awarded a technical score to each bidder based on the bidder's proposal, which was required to contain certain components that at times required specific verbiage. (*Id.* at 8-12, 20-29.) In other words, each proposal made in response to the ODRC RFP was specifically tailored to do so, not serve as generic marketplace advertisement.

Courts have concluded that such limited dissemination does not constitute advertising or promotion as a matter of law. *See, e.g., Garland Co. Inc. v. Ecology Roof Systems Corp*., 895 F. Supp. 274, 276 (D. Kan. 1995) (A letter sent by roofing material contractor to a potential customer to whom both parties were bidding, containing allegedly false comparison of the parties' roofing material: held not "advertising" or "promotion" because these terms "include a notion of public dissemination of information which goes beyond one isolated letter to a single potential customer"); *Johnson Controls, Inc. v. Exide Corp.*, 152 F.Supp.2d 1075, 1081-82 (N.D. Ill. 2001) (holding "misrepresentations made to a single customer in the context of negotiating a transaction

cannot constitute 'advertising' or 'promotion' in the statutory sense."); *Kratos Defense Engineering Sols., Inc. v. NES Associates, LLC*, 1:10cv1452 (GBL/IDD), 2011 WL 13248293, at *7-12 (E.D. Va. Mar. 23, 2011) (granting motion to dismiss Lanham Act claim, holding that a competitor's proposal for a government prime contract submitted in response to a government agency's Request for Quotation (RFQ) was not commercial advertising or promotion within the purview of the Lanham Act).

LeoTech's conclusory characterization of the alleged RFP statements as "commercial promotion," [ECF No. 1 ¶ 49], cannot substitute for factual allegations establishing the *Grubbs* dissemination element. *See Iqbal*, 556 U.S. at 678. Therefore, the Court should dismiss Count I for that reason alone.

**C. LeoTech Has Not Plausibly Pleaded Actionable Falsity.**

A false-advertising claim cannot rest on a competitor's disagreement with a proposal's judgment, projected performance, pricing, or assessment of operational capability. *See FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 453 (6th Cir. 2024) ("Statements of opinion will not support a false-advertising claim."); *Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-CV-427, 2015 WL 12999664, at *5-6 (S.D. Ohio Mar. 12, 2015) (dismissing false advertising claim where plaintiff's allegation about defendant's price change did not plausibly allege false advertising and was a "bald assertion that [defendant's] sale prices are actually its regular prices is conclusory and speculative"). In other words, to survive Flash AI's Motion to Dismiss, LeoTech must plausibly allege a specific, false, or misleading statement of fact. It has not done so nor can it.

#### *1. The implementation allegations are unsupported conclusions.*

LeoTech alleges Flash AI "misrepresented" that it was prepared to implement its system "fully and immediately" upon contract execution. [ECF No 1. ¶ 26.] But it does not identify the operative language from Flash AI's proposal, explain the proposal's temporal or contractual context, or allege facts demonstrating that *any* identified statement was false when made. LeoTech's Complaint instead relies on the bare assertion that Flash AI was "not capable" of implementation at the requisite scale, followed by speculation concerning staffing and an alleged twelve-week implementation period. [*Id.* ¶¶ 27–31.]

These allegations do not establish falsity. *See FedEx*, 97 4th at 454 (holding that a complaint "must explain *why* and *how*" a challenged statement is false and affirming dismissal of plaintiff's false advertising claim for failure to state a claim). An implementation plan, rollout schedule, or staffing plan is not inherently inconsistent with an assertion of readiness to begin performance upon award. And an allegation that additional personnel may be hired or trained does not plausibly establish that Flash AI made a false factual representation rather than proposing a lawful and ordinary implementation model.

LeoTech's baseless allegations notwithstanding, the state court has already found in its Order on LeoTech's Motion for Temporary Restraining Order that Flash AI has already successfully implemented its proprietary platform statewide. (Ex. B at 1, 4-5.) Not only that but Flash AI commenced work on the contract within 14 *days* of executing the contract. (*Id.* at 2.) Moreover, a cursory look at Flash AI's proposal as referenced in LeoTech's Complaint does not indicate a 12-week roll implementation plan, as LeoTech contends. Instead, Flash AI notes that its proposed schedule, which starts at week 4, contains "illustrative" labels that "may compress depending on ODRC and ViaPath readiness." (Ex. C at 084-086). And "[b]ecause *Flash Signal* is

already integrated with ViaPath and validated at ODRC scale, actual timelines are expected to be materially faster than a new vendor implementation." (*Id.* at 086.) In other words, LeoTech's misrepresented timeline is one of its own making.

***2. The experience allegations do not identify any false attribution.***

LeoTech further alleges that Flash AI claimed "extensive experience" with Ohio agencies and "misleadingly suggested" that Flash AI itself had worked with those agencies beginning in 2023 despite Flash AI being purportedly formed in 2025. [ECF No. 1 ¶¶ 21, 32–35.] LeoTech does not allege the actual wording of the claimed statement, who made it, whether the proposal described company experience, personnel experience, affiliated-entity experience, prior work performed through another business, or any other relevant basis for the representation.

The conclusion that Flash AI "misrepresented" its experience is no substitute for pleaded facts showing an objectively false assertion. *See FedEx*, 97 4th at 454 (holding that a complaint "must explain *why* and *how*" a challenged statement is false and affirming dismissal of plaintiff's false advertising claim for failure to state a claim). *See also Ashley Furniture*, 2015 WL 12999664, at *5-6 (dismissing false advertising claim where plaintiff failed to adequately plead facts showing falsity or misrepresentation). And the Lanham Act does not create liability because a competitor reads a proposal in the least charitable fashion and declares that reading deceptive. *See FedEx*, 97 F.4th at 453 ("Statements of opinion will not support a false-advertising claim.").

But as before, LeoTech is finding falsities where there are none. As laid out in Flash AI's proposal, prior to the formation of Flash AI, "Flash personnel worked hands-on with Ohio Agencies." (Ex. C at 002.) Flash was then "formally established" in 2025 "following two (2) years of active platform development that began in 2023." (*Id.* at 003.) In fact, the Flash AI platform was "built . . . alongside Ohio corrections and law enforcement professionals . . . [and] was

designed around the actual workflows, intelligence priorities, and operational demands of the Agencies Flash was already working with." (*Id.*) As part of its required response to the RFP, Flash AI also identified three prior projects with which it had relevant experience. (*See* Ex. A at 23-24; Ex. C at 021-023.)

Again, regardless of LeoTech's pleading failures, no amendment can cure its manufacturing of purported misleading statements.

### *3. The CJIS and pricing allegations are likewise conclusory.*

LeoTech alleges Flash AI represented that it met "all applicable" CJIS Security Policy controls, then points to alleged limitations involving a privileged-access-management solution, ransomware backup protection, and a privacy impact assessment. [ECF No. 1 ¶¶ 36–39.] The Complaint does not identify the specific control, contractual requirement, policy provision, or compliance condition allegedly violated. It does not allege that the cited features were required for Flash AI's contracted system at the relevant time. It does not plead the contents of any purported representation or facts showing its falsity, nor can it. *See FedEx*, 97 4th at 454 (holding that a complaint "must explain *why* and *how*" a challenged statement is false and affirming dismissal of plaintiff's false advertising claim for failure to state a claim).

A cursory look at the RFP itself shows a proposal need only confirm that the proposed platform is CJIS compliant. (Ex. A at 17.) The RFP does not require a "Privileged Access Management solution" or "ransomware backup-protection" as LeoTech alleges. [ECF No. 1. ¶¶ 37-38.] Moreover, Flash AI does not "admit" that it fails to maintain ransomware backup-protection. Instead, Flash AI's proposal indicates that no additional protections are in place because no backups are done by "copying to a remote data site." (Ex. C at 173.) Thus, LeoTech

again has manufactured what it presumes to be misrepresentations rather than proffer objective falsities.

LeoTech's pricing allegations are even more attenuated. LeoTech alleges that Flash AI misrepresented its ability to perform at the proposed price because its pricing was "highly speculative," its product was "unproven" at the required scale, and it allegedly did not employ enough personnel. [ECF No. 1 ¶¶ 40–42.] Yet, LeoTech fails to allege facts which, if taken as true, demonstrate why Flash AI's pricing is "speculative" (let alone "highly"), that Flash AI's product is "unproven," and Flash AI did not employ enough personnel. At best, LeoTech is expressing opinions about commercial risk and a competitor's subjective view of Flash AI's proposed economics, and nothing more.

Regardless, the state court has already determined that Flash AI is performing under the contract for substantially less than what LeoTech bid. (Ex. B at 6 ("Any difference in the technical scores was overshadowed by the vast price differences between LeoTech and Flash AI's proposals."); *see also id.* at 7 (referring to LeoTech's proposed cost as being "5.5 times more" as that of Flash AI).) As such, no amendment can save LeoTech from its deficient Complaint.

* * *

A federal false advertising claim demands more than the assertion that a competitor's proposal is new, ambitious, economically aggressive, or less experienced than the plaintiff's preferred bidder. Because LeoTech's Complaint never plausibly alleges an actionable false statement, nor can any amendment save it from its deficiencies, Count I must be dismissed.

### D. LeoTech Does Not Plausibly Plead Material Deception or Proximate Commercial Injury.

Even if LeoTech had pleaded an actionable promotional statement and falsity—it has not—it still must plausibly allege material deception and injury proximately caused by the alleged



303783709v5

deception. *See Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132-33 (2014) (holding a false-advertising plaintiff must (1) "allege an injury to a commercial interest in reputation or sales" that (2) "*flow[s] directly from the deception wrought by the defendant's advertising*") (emphasis added). *See also Ashley Furniture*, 2015 WL 12999664, at *8 (dismissing false advertising claim when plaintiff "fails to plead any facts to plausibly support an inference of a causal link between [defendant's] advertisements and an injury to [plaintiff]"); *Lewis v. Acuity Real Estate Servs., LLC*, 597 F.Supp. 1154, 1159-60 (E.D. Mich. 2022) (dismissing Plaintiff's false advertising complaint as "Plaintiff has not plausibly alleged a commercial injury flowing directly from Acuity's false advertising"). Again, the Complaint offers only conclusory recitations.

LeoTech alleges that Flash AI's statements were "material" because Flash AI expected ODRC to consider them in making its award decision. [ECF No. 1 ¶ 43.] That assertion merely restates the concept of materiality. It does not allege facts showing that any particular statement affected the procurement evaluation, how ODRC scored or relied on that statement, or why the alleged information was outcome-determinative under the RFP.

The causation allegation is even more deficient. LeoTech asserts that "[b]ut for" Flash AI's alleged representations and omissions, ODRC "would have awarded the Contract" to LeoTech. [ECF No. 1 ¶ 44.] But the Complaint contains no pleaded facts supporting that result. It does not allege that LeoTech was next in the overall ranking, that the removal of any specified score would have changed the award, that ODRC was required to choose LeoTech if Flash AI were disqualified, or that a re-evaluation would necessarily result in an award to LeoTech rather than another bidder or a new competition.

Indeed, the state court came to this conclusion in its Order Denying LeoTech's Motion for Temporary Restraining Order, finding "the harm asserted by LeoTech is purely speculative since

it assumes that it would be the successful offeror if this Court orders ODRC to restart the RFP process." (Ex. B at 6.) Further referencing the scoring rubric, the state court noted that LeoTech was the "lowest scoring candidate" of three candidates, including Flash AI. (*Id.* at 2 (citing Ex. D, ODRC Scoring Rubric.) Moreover, the RFP itself did not require ODRC to enter into a contract with any one of the responding bidders. (*See e.g.*, Ex. A at 13 ("*If* this RFP results in a Contract award . . . ." (emphasis added).)

The Lanham Act does not authorize a competitor to recover a lost government contract merely by asserting that it would have won absent a rival's alleged misstatements. The Complaint *must* plead facts showing a plausible causal connection between a legally actionable false promotion and a commercial injury. LeoTech's does not.

**E. The Court Should Decline Supplemental Jurisdiction over LeoTech's State Law Claims.**

Counts II and III are state law claims over which the Court has, at most, supplemental jurisdiction. Once Count I is dismissed, no federal claim remains. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." "Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007). The usual course is to dismiss state law claims without prejudice when the federal claims are dismissed before trial, particularly at the pleading stage. *See, e.g.*, *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), *overruled on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

That course is especially appropriate here because the remaining claims raise Ohio-law issues concerning Ohio's deceptive-trade-practices statute and common-law unfair competition in the context of an Ohio public procurement. Alternatively, if the Court reaches Count II, it should

dismiss the claim because the Complaint does not identify facts plausibly establishing a deceptive trade practice beyond the same conclusory allegations already insufficient under Count I. If the Court reaches Count III, it should likewise dismiss because the LeoTech identifies no distinct, cognizable Ohio common-law theory and merely repackages its asserted procurement grievance.

## V. CONCLUSION.

At bottom, LeoTech disagrees with ODRC's selection of Flash AI. Its allegations here concern the comparative experience of bidders, the adequacy of staffing, technological capabilities, security controls, and price. These issues are ordinarily evaluated in the procurement process by the responsible public agency, applying the criteria stated in the RFP. They do not become federal Lanham Act claims simply because the unsuccessful bidder characterizes the prevailing proposal as misleading. Such claims are instead within the purview of the state court if said claims are actionable at all. Tellingly, LeoTech could have sought the same relief it seeks here in state court, including its Lanham Act claim, but declined to do so. Instead, LeoTech demands Flash AI incur more costs in a wholly related federal case, thereby wasting this Court's time and resources.

LeoTech's Complaint itself confirms the point. LeoTech alleges it was a competing bidder, claims injury in the form of a lost public contract, and asks the Court to enjoin Flash AI from performing under the ODRC contract, force Flash AI to notify ODRC that it made purportedly false representations, disgorge profits, and award damages tied to the ODRC contract. [ECF No. 1 ¶¶ 2, 44–46, 50–52, Prayer for Relief.] This is nothing more than a bid protest in false advertising clothing. Section 43(a) does not provide a federal vehicle for a disappointed bidder to relitigate a state agency's procurement award based on conjecture about a competitor's proposal.

Because LeoTech has not pleaded commercial advertising or promotion, actionable falsity, material deception, or plausible causation and injury, its Lanham Act claim therefore fails as a matter of law. Therefore, Flash AI respectfully requests that the Court dismiss Count I with prejudice, decline to exercise supplemental jurisdiction over Counts II and III and dismiss those claims, and grant Flash AI such other and further relief as the Court deems just and proper.

Dated: September 18, 2026

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

*/s/ Rachel A. Smoot*
Rachel A. Smoot (0092296)
rsmoot@taftlaw.com
41 S. High Street, Suite 1800
Columbus, OH 43215
Phone: (614) 221-2838
Fax: (614) 221-2007

Philip R. Bautista (0073272)
pbautista@taftlaw.com
200 Public Square, #3500
Cleveland, OH 44114
Phone: (216) 706-3957
Fax: (216) 241-3707

*Attorneys for Defendant Flash AI, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2026, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Rachel A. Smoot*