# EXHIBIT F
# Dec 30, 2025 Data Facilitation Agreement

viapath TECHNOLOGIES

3120 Fairview Park Dr. / Suite 300
Falls Church, VA 22042

**Global Tel*Link Corporation d/b/a ViaPath Technologies**
**Data Facilitation Agreement**

This DATA FACILITATION AGREEMENT ("**Agreement**") is entered and made effective as of the date of last signature ("**Effective Date")** and is by and between Ohio Department of Rehabilitation & Correction ("**Customer**"), Global Tel*Link Corporation d/b/a ViaPath Technologies ("**ViaPath**"), an Idaho corporation having its principal place of business at 3120 Fairview Park Drive, Suite 300, Falls Church, Virginia 22042-4570, and Flash AI LLC d/b/a Flash AI ("**Supplier**"), a company having its principal place of business at 91 S 30th Street, Newark, OH 43055. (Customer, ViaPath, and Supplier are collectively referred to herein as the "Parties" and each a "Party").

**WHEREAS**, Customer has requested ViaPath to facilitate the sharing of Customer-owned information from certain ViaPath systems with Supplier. The sole and exclusive purpose and permitted use by the Customer of Supplier' technology and systems are to assist the Customer in performing its law enforcement and public safety obligations in accordance with applicable laws, rules, and regulations **("Proposed Use").**

**WHEREAS**, The Parties agree to facilitate the Proposed Use, provided the terms and conditions set forth herein are met.

**NOW, THEREFORE**, as of the Effective Date and in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

1 Proposed Use. Supplier will interface its system with inmate call data, including Metadata as defined below, and associated call recordings currently being provided to the Customer by ViaPath (collectively, the "**Records**"). For the purposes of clarity, the Parties agree that the Proposed Use includes notifying appropriate, authorized law enforcement agencies of actual or suspected historic or prospective criminal activity, other legitimate law enforcement and corrections activity of the Customer, and the provision of troubleshooting and other technical information regarding the ViaPath inmate calling platform provided to the Customer, provided, however, the Proposed Use does not include the use, distribution, disclosure or sharing of the Records except as specifically authorized by this Agreement. The Parties hereby consent to the Proposed Use as long as this Agreement is in effect and all Parties are in full compliance with its terms.

2 Cost. At Customer request, ViaPath agrees to provide Supplier API access to Customer data at no cost to Customer. Supplier will bear any costs associated with the ViaPath API which will be governed by the existing ***Pricing Agreement*** between ViaPath and Supplier dated as of [DATE] .

3 Facilitation of Data Transfer. In connection with the Proposed Use, ViaPath will deploy an application program interface to transfer the Records requested by the Customer to Supplier at the Customer's instruction in near-real-time and in a format provided by ViaPath. Supplier will not use, distribute, disclose, or share the Records for any other purpose other than the Proposed Use without the prior written agreement of the Customer or ViaPath.

**EXHIBIT**
**F**

4 Term. This Agreement shall commence on the Effective Date and continue for a period of one (1) year (“**Initial Term”).** Unless otherwise terminated in accordance with its terms, this Agreement shall automatically renew for one (1) year periods.

5 Termination.

5.1 Termination for Convenience by ViaPath and/or Supplier.
ViaPath and/or Supplier shall have the right to terminate this Agreement without cause, for any reason, at any time, provided, however, that no such termination shall be effective unless all Parties are given at least thirty (30) days’ prior written notice.

5.2 Termination for Convenience by Customer.
Customer shall have the right to terminate this Agreement without cause, for any reason and at any time.

5.3 Termination for Breach.
Any Party may terminate this Agreement in the event that a material breach hereof is not cured within thirty (30) days after written notice of such breach to the breaching Party by providing a written notice of termination to the other Parties.

6 Notice. Any communication or notice regarding termination or any other provision of this Agreement shall be in writing and shall be given to the Parties or their designated representative at the following addresses or at such other addresses that may be specified in writing by the Parties and must be delivered as follows:

For ViaPath:

By First Class and Certified Mail, Return Receipt Requested in Postpaid Envelope or by Nationally Recognized Courier Service or by Hand Delivery

Global Tel*Link Corporation
d/b/a ViaPath Technologies
Attn: Robert Towner
3120 Fairview Park Dr. STE 300
Falls Church, Virginia 22042-4570

For Flash AI
By First Class and Certified Mail, Return Receipt Requested in Postpaid Envelope or by Nationally Recognized Courier Service or by Hand Delivery

Flash AI
Attn: Trace Johnson
91 S 30th Street
Newark, OH 43055

For Customer:
By First Class and Certified Mail, Return Receipt Requested in Postpaid Envelope or by Nationally Recognized Courier Service or by Hand Delivery

______________________________
Attn: ________________________
______________________________
______________________________
______________________________

7 Compliance with Applicable Laws. The Parties will comply with all laws, regulations, policies, and government guidelines applicable to the Proposed Use and their access to and use of the Records, including, as applicable, the California Consumer Privacy Act ("**CCPA**"). Each Party acknowledges and agrees that they are solely responsible for their compliance with such laws, regulations, policies, and guidelines and that ViaPath does not make any representation or warranty as to the legal requirements and restrictions applicable to the Proposed Use. Each Party will have no obligations, responsibilities, or liabilities for the compliance of the other Parties with any and all laws, regulations, policies, guidelines, rules or other requirements applicable to the other Parties by virtue of the Proposed Use or possession and use of the Records. Further, all Parties agree that the transfer of data from ViaPath to Supplier under the terms of this Agreement is not a sale of data by ViaPath, but is being made by ViaPath solely at the express direction and instruction of Customer.

8 Indemnification. ViaPath is facilitating the Proposed Use at the express direction and instruction of Customer. ViaPath does not make any representation or warranty as to the legality of the Proposed Use. To the maximum extent permitted by law, Supplier will protect, indemnify, defend, and hold harmless Customer and ViaPath, and each of their respective officers, directors, employees, and authorized representatives from and against any and all costs, claims, demands, suits, damages, losses, fines, forfeitures and other liabilities arising from or in any way related to the Records or the Proposed Use, including, without limitation, claims arising from the acts or omissions of Supplier.

9 Indemnification Relating to Records Security. Supplier will protect, indemnify, defend, and hold harmless each Customer and ViaPath, and each of their respective officers, directors, employees and authorized representatives, from and against any and all costs, claims, demands, suits, damages, losses, fines, forfeitures and other liabilities arising from or in any way related to the use and handling of the Records by Supplier or its vendors. In the event any governmental or other investigation, inquiry, or claim is initiated or made against Customer or ViaPath, or any of their respective officers, directors, employees, or authorized representatives with regard to this Agreement, its performance, the Proposed Use, or the Records, Supplier will (i) use its best efforts to assist each of Customer and ViaPath in its response to the investigation, inquiry, or claim; and (ii) protect, indemnify, defend, and hold harmless each Customer and ViaPath, and each of their respective officers, directors, employees and authorized representatives, from and against any and all costs, claims, demands, suits, damages, losses, fines, forfeitures and other liabilities arising from or in any way related to any such investigation, inquiry or claim.

10 Records Security. Supplier acknowledges that the Records will include (a) sensitive information in the recordings and in the resulting text after processing through the Verus System and (b) personally identifiable information tied to the recordings and the resulting text, including Customer Proprietary Network Information as defined in 47 U.S.C. §222 and the relevant implementing regulations of the Federal Communications Commission (collectively, "**Metadata**") and that it is therefore Supplier's obligation to keep the Records secure and protected from unauthorized disclosure. Supplier will not use, distribute, disclose, or share the Records for any purposes other than the Proposed Use. Supplier will not share the Records that contain Metadata with any third party. Accordingly, Supplier will:

10.1 If storing, processing, or otherwise using the Records in a cloud environment, use only a CJIS-compliant hosting environment from a nationally recognized hosting provider (e.g., Amazon Web Services);

3120 Fairview Park Dr. / Suite 300
Falls Church, VA 22042

10.2 Restrict access to the Records to those personnel who have a need to know as part of their official duties;
10.3 Ensure that its employees (i) obtain and/or use information from the Records only for the Proposed Use and (ii) transmit or disclose any such information only as permitted by the Proposed Use or as required by law;
10.4 Keep all user access credentials confidential and prohibit the sharing of these credentials;
10.5 Use at least the same efforts that it uses with respect to its most sensitive information to monitor and prevent against unauthorized access to or use of the Records and any information derived therefrom (whether in electronic form or hard copy);
10.6 Use AES 256 or better encryption for storage (data at rest) and the same encryption standards when/if remotely storing or backing up the data to alternative media such as disk or tape;
10.7 Conduct transfer of and/or access to the Records only when appropriate tunnel encryption can be implemented (data in motion);
10.8 When at all possible, employ multi-factor authentication to decrypt and access the Records;
10.9 Use a formal patch management process that includes performing vulnerability scanning on both internal and external devices regularly and application of all critical patches within 10 days of discovery of the need for such patches;
10.10 Implement a data loss prevention application and processes to protect against leakage of the Records; and
10.11 Log, investigate, and resolve all data-security failures that may impact the Records, and immediately bring to ViaPath's and the Customer's attention any data-security incident that does or may impact the Records.
10.12 Upon the termination of this Agreement, Supplier will remove from its systems and return all Records as mutually directed by the Customer and ViaPath.

11 In the event that any agreement between Supplier and any correctional facility or law enforcement Customer for services similar to those provided for herein requires, as a whole or in part, a greater degree of data security protection than mandated herein ("**Enhanced Security Requirements**"), then Supplier will notify ViaPath and provide a copy of such Enhanced Security Requirements to ViaPath. The Enhanced Security Requirements will be deemed incorporated into and part of this Agreement and Supplier will comply with and provide to ViaPath no less than the Enhanced Requirements for all Records shared pursuant to this Agreement.

12 Ownership of Respective Systems. Both ViaPath and Supplier's program systems, their applications, and related records, data, and information shall at all times remain the respective Party's sole and exclusive property unless prohibited or otherwise required by law, in which event, the Customer shall have the unlimited right to use such records, data, and information solely for investigative and law enforcement purposes. However, during the term of this Agreement and for a reasonable period of time thereafter, Supplier will provide the Customer with reasonable access to the foregoing records, data and information. The Customer will retain custody and ownership of all Verus transcriptions. Supplier (or its licensors, if any) have and will retain all right, title, interest, and ownership in and to (i) the Verus Software and any copies, custom versions, modifications, or updates of the Verus Software, (ii) all related documentation, and (iii) any trade secrets, know-how, methodologies, and processes related to Supplier' applications, the program system, and Supplier's other products and services (the "**Materials**"). The Materials constitute proprietary information and trade secrets of Supplier and its licensors, whether or not any portion thereof is or may be the subject of a valid copyright or patent.

viapath TECHNOLOGIES

3120 Fairview Park Dr. / Suite 300
Falls Church, VA 22042

13 Limitation of Liability. VIAPATH WILL HAVE NO LIABILITY TO SUPPLIER FOR ANY LOSS OR INJURY ARISING OUT OF OR IN CONNECTION WITH THE PROPOSED USE OR THE RECORDS. IN NO EVENT WILL VIAPATH BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, HOWEVER ARISING, INCURRED BY SUPPLIER FROM THE PROPOSED USE AND ITS RECEIPT OR USE OF THE RECORDS.

14 No Assignment. This Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. Except for assignments to a Party's affiliates or to any entity that succeeds to a Party's business in connection with a merger or acquisition, no Party may assign this Agreement without the prior written consent of the other Parties.

15 No Third-Party Beneficiaries. No third party shall be considered a beneficiary of this Agreement or entitled to any rights under this Agreement. Specifically, this Agreement does not and shall not be construed as creating any obligation or liability on the part of ViaPath to any third party.

16 Force Majeure. A Party may be excused from performance under this Agreement to the extent that performance is prevented by any act of God, war, civil disturbance, terrorism, strikes, supply or market, failure of a third party's performance, failure, fluctuation or non-availability of electrical power, heat, light, air conditioning or telecommunications equipment, other equipment failure or similar event beyond its reasonable control, provided, however that the affected Party will use its reasonable efforts to remove such causes of non-performance.

17 Counterparts and Agreement Signatures. If this Agreement is executed in two or more counterparts, each such counterpart and any copies thereof, shall be deemed an original hereof. Each Party agrees that delivery of an executed copy of this Agreement by facsimile transmission or by PDF e-mail attachment will have the same force and effect as hand delivery with original signatures. Each Party may use facsimile or PDF signatures as evidence of the execution and delivery of this Agreement to the same extent that original signatures can be used.

18 No Changes to Prior Agreements. Except as expressly amended by this Agreement, all of the terms, conditions, and provisions of the Customer's master and or other agreements (and any amendments thereto) with ViaPath will remain in full force and effect.

19 Severability. If any provision of this Agreement is held to be invalid or unenforceable, the validity or enforceability of the other provisions will remain unaffected.

20 No Waiver. No waiver by any Party of any event of default under this Agreement will operate as a waiver of any subsequent default under the terms of this Agreement.

21 Governing Law. The interpretation and application of this Agreement shall be governed by the laws of the State of Virginia, without regard to principles of conflicts of law.

22 Entire Agreement. This Agreement constitutes the entire agreement of the Parties regarding the subject matter set forth herein and supersedes any prior or contemporaneous oral or written agreements or guarantees regarding the subject matter set forth herein.

viapath TECHNOLOGIES

3120 Fairview Park Dr. / Suite 300
Falls Church, VA 22042

**GLOBAL TEL*LINK CORPORATION D/B/A VIAPATH TECHNOLOGIES**

By: ____________________
Name: ____________________
Title: ____________________
Date: ____________________

**FLASH AI**

By: ____________________
Name: Trace Johnson
Title: President
Date: 12/29/2025

**Customer: OHIO DEPARTMENT OF REHABILITATION AND CORRECTION**

By: [signature]
Name: Edward Banks
Title: Assistant Director
Date: 12/30/2025